UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MILTON VALERIO,
                          Plaintiff,

-v-

THE CITY OF NEW YORK *et al.*,
                          Defendants.

18-CV-11130 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Milton Valerio, an employee of the New York City Department of Correction ("DOC"), brings this action *pro se* against a DOC doctor, Herbert Kwasnik, and the City of New York, alleging that they discriminated against him on the basis of national origin, race, and color, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290–297, and the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code §§ 8-101–103. (*See* Dkt. No. 22 ("Compl.").) Now before the Court is Defendants' motion to dismiss the operative complaint. For the reasons that follow, the motion is granted in part and denied in part.

**I.    Background**

The following facts are taken from Valerio's Amended Complaint and opposition brief and are accepted as true for purposes of this motion. *See Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (considering and construing liberally allegations contained in a *pro se* plaintiff's complaint and opposition papers); *Grimmett v. Corizon Med. Assocs. of N.Y.*, No. 15 Civ. 7351, 2017 WL 2274485, at *1 n.1 (S.D.N.Y. May 24, 2017) (citing *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987)).

Valerio has been employed by the DOC as a corrections officer since June 2008. (Compl. ¶ 2.) In November 2017, at the recommendation of Dr. Arnold Wilson, Valerio underwent surgery to treat a shoulder injury he sustained while on the job. (*See* Compl. ¶¶ 5–6.) Dr. Wilson advised that Valerio take a leave of absence for at least three months following the surgery and provided a physician's note describing Valerio's limitations as a "total disability." (Compl. ¶¶ 7–8.)

A corrections officer seeking extended sick leave must obtain approval from the Health Management Division ("HMD"). (Compl. ¶ 11.) Sometime between late 2017 and early 2018, DOC assigned Defendant Kwasnik, a physician with the HMD, to Valerio's case so that Dr. Kwasnik could assess Valerio's qualification for the "sick list," the designation that would permit extended sick leave. (*See* Compl. ¶¶ 12–13.)

Valerio alleges that at his first visit with Dr. Kwasnik, Dr. Kwasnik mocked Valerio's accent, ordering him to "speak properly," and made derogatory comments about Plaintiff's race and national origin, specifically telling him, "I don't care about you and I don't care about Dominican people." (Compl. ¶15.) Dr. Kwasnik refused to administer a physical examination, telling Valerio that his medical documents from Dr. Wilson were "bullshit" and that Valerio would go back to work "whenever [Kwasnik] fel[t] like it." (Compl. ¶ 16.) He ordered Valerio to "get the fuck out of [the] office." (*Id.*) Despite his failure to issue a physical examination and Dr. Wilson's contrary assessment, Dr. Kwasnik designated Valerio as able to work with a "medically monitored restriction" ("MMR"), precluding the extended sick leave Valerio sought. (Compl. ¶ 17.)

Valerio reported this incident to a supervisor, who advised Valerio to put his concerns in writing. (Compl. ¶ 23.) Valerio did so, completing a form requesting to be transferred to a new doctor, but the request was denied by the DOC's chief surgeon. (Compl. ¶¶ 24–25.)

On February 15, 2018, Valerio attended a second evaluation with Dr. Kwasnik. Dr. Kwanik's tone, Valerio alleges, was "aggressive and demeaning." (Compl. ¶ 27.) Valerio exited the exam room and requested that a nurse sit in on the remainder of the appointment. (Compl. ¶¶ 29–30.) A nurse accompanied Valerio back into the room and the exam resumed. (Compl. ¶¶ 30–31.) When Dr. Kwasnik began touching Valerio's hands and chest, Valerio became uncomfortable and removed Dr. Kwasnik's hands. (Compl. ¶ 32.) Dr. Kwasnik responded by shoving Valerio, ordering him to leave the room, and shouting, "[Y]ou'll do what I tell you to do, and if you don't like it then go back to your country." (Compl. ¶ 33.) Dr. Kwasnik forced Valerio out of the exam room before concluding the evaluation. (*Id.*) Dr. Kwasnik thereafter threatened to categorize Valerio as fit to work full duty, but after Valerio stated that he would report Dr. Kwasnik to the New York State Department of Health, Dr. Kwasnik again categorized Valerio as MMR. (Compl. ¶ 34.)

Between Valerio's surgery in mid-November 2017 and April 2018, he was functionally unable to work. (Compl. ¶ 41.) Because he did not obtain a "sick list" designation — and therefore could not obtain official sick leave — Valerio took a succession of unauthorized sick days. (Compl. ¶¶ 20, 41.) He was eventually disciplined for the unapproved absences, and he ultimately received a year of probation and was forced to forfeit 60 sick days. (Dkt. No. 31 at 4.) During that period, Valerio attended periodic check-ups with Dr. Kwasnik, who continued to designate Valerio as MMR. (*See* Compl. ¶ 42.) No discriminatory remarks were made at these appointments, and each was observed by a nurse at Valerio's request. (*Id.*)

Valerio eventually filed a memo with Damon Harris, Commanding Officer of the HMD, voicing concerns about his treatment by Dr. Kwasnik. (Compl. ¶ 35.) In March 2018, Valerio filed a complaint with the N.Y.C. Equal Employment Opportunity Office ("EEO"), alleging discrimination on the basis of race, national origin, and disability.[1] (Compl. ¶ 37.) Plaintiff also filed a complaint with the N.Y.S. Department of Health.[2] (Compl. ¶ 40.)

In or around April 2018, Dr. Wilson determined that Valerio had recovered enough for him to return to "light duty," meaning work that excluded inmate contact, lifting, bending, climbing, squatting, or standing for long periods of time. (Compl. ¶ 43.) Around the same time, Valerio communicated to Dr. Kwasnik his desire and ability to return to administrative or other sedentary work. (Compl. ¶ 44.) Defendant Kwasnik then reversed course, placing Valerio on the sick list and precluding Valerio's desired return to work. (Compl. ¶ 46.) During follow-up appointments in the spring and summer of 2018, Dr. Kwasnik denied Valerio's repeated requests to be removed from the sick list so he could resume work. (Compl. ¶ 51.) This forced absence, Valerio alleges, deprived him of opportunities to earn paid overtime, which had previously constituted a significant portion of his income, and to participate in professional development programs. (*See* Compl. ¶ 52; Dkt. No. 31 at 5.) Valerio returned to "light duty" work in February 2019 and was subsequently transferred to a different facility. (Compl. ¶¶ 53–54.)

In 2018, Valerio filed a charge with the U.S. Equal Employment Opportunity Commission, and he received Notice of Right to Sue dated September 18, 2018. (Compl. at 6.) On November 28, 2018, he filed this *pro se* action. (*See* Dkt. No. 1.) On June 3, 2019, Valerio

---

[1] On October 1, 2018, the EEO administratively closed Valerio's case, based on the filing of his complaint with the federal Equal Employment Opportunity Commission. (Compl. ¶ 39.)

[2] On March 4, 2019, the Department found that there was not enough evidence to bring a charge of professional misconduct against Dr. Kwasnik. (Compl. ¶ 40.)

amended his complaint. (*See* Dkt. No. 22.) Defendants filed the present motion to dismiss on July 10, 2019 (*see* Dkt. No. 24), and the motion is now fully briefed and ripe for the Court's consideration. (*See* Dkt. Nos. 26, 31, 32.)

## II.     Legal Standard

To survive a motion to dismiss for failure to state a claim upon which relief may be granted, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering such a motion, a court must accept the factual allegations in the plaintiff's complaint as true and draw all inferences in the plaintiff's favor. *See Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006). Additionally, a complaint "filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Consistent with the duty to liberally construe *pro se* pleadings, a court considering a motion to dismiss a *pro se* complaint may also consider and credit allegations advanced in opposition papers and other filings. *See Henning v. N.Y.C. Dep't of Corr.*, No. 14 Civ. 9798, 2016 WL 297725 (S.D.N.Y. Jan. 22, 2016).

## III.    Discussion

### A.     Title VII

Valerio's complaint invokes three theories of discrimination under Title VII: disparate treatment, retaliation, and hostile work environment. After addressing the preliminary matter of individual liability under Title VII, the Court addresses each in turn.

#### 1.     Claims Against Dr. Kwasnik

At the outset, as the Defendants rightfully emphasize and Valerio seems to concede, Title VII does not provide for individual liability. *See Scalercio-Isenberg v. Morgan Stanley Servs.*

5

*Grp. Inc.*, No. 19 Civ. 6034, 2019 WL 6916099, at *7 (S.D.N.Y. Dec. 19, 2019). The Title VII claims against Dr. Kwasnik are therefore dismissed.

### 2. Disparate Treatment

Valerio first invokes Title VII's basic prohibition on disparate treatment. Disparate treatment claims under Title VII are "subject to the burden-shifting evidentiary framework set forth in *McDonnell Douglas*." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).[3] Courts evaluating such claims on a motion to dismiss consider "whether the allegations in the complaint give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a litigation." *See Littlejohn*, 795 F.3d at 312. To meet these reduced requirements, a complaint must plausibly allege facts showing that the plaintiff (1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) has at least minimal support for the proposition that the employer was motivated by discriminatory intent. *Id.* at 311.

Defendants contend that Valerio has failed to satisfy the third prong of the *McDonnell Douglas prima facie* case, that is, he has not alleged an adverse employment action. (*See* Dkt. No. 26 at 5.) A "plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citation omitted). A "materially adverse" change is one that is "more disruptive than a mere inconvenience or an alteration in job responsibilities." *Id.* (quotation marks and citation omitted). Valerio argues that his extended mis-

---

[3] Disparate treatment claims under the NYSHRL and § 1981 are subject to the same analysis. *See Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011); *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).

categorization — first as MMR, when he was qualified for the sick list, and later, on the sick list, when he claims he was able to perform light duty — constitutes an adverse employment action. The Court agrees.

The first period of mis-categorization, Valerio alleges, resulted in extended unauthorized absences, and, consequently, a disciplinary action that became a part of his permanent employment record and the loss of 60 of his sick days, while the second resulted in an extended involuntary absence that deprived Valerio of the opportunity to earn overtime and to participate in other professional opportunities. As to the first period, when Valerio was unable to work but denied placement on the sick list, Defendants respond with the conclusory assertion that the deprivation "is not an actionable adverse action." (Dkt. No. 26 at 6.) In support of that otherwise unelaborated proclamation, Defendants cite *Figueroa v. N.Y. City Health & Hosps. Corp.*, 500 F. Supp. 2d 224 (S.D.N.Y. 2007), which their brief describes as "holding that [a] denial of sick leave was not [an] adverse employment action because plaintiff was not prohibited by her employer from returning to work." (Dkt. No. 26 at 6.) *Figueroa* held no such thing.[4] *See*

---

[4] In *Figueroa*, the plaintiff had been initially denied sick leave but later was awarded backpay by her employer after filing an internal grievance. *See id.* The question before the *Figueroa* court was whether the initial denial could constitute an adverse action even though the employee was later made financially whole. *See id.* The portion of that opinion referenced by Defendants concerned the *Figueroa* court's comparison of the facts to *Burlington Northern v. Santa Fe. Ry. Co.*, 548 U.S. 53 (2006). But, as the portion of the opinion quoted above indicates, the *Figueroa* court ultimately assumed that the denial was an adverse action. *See Figueroa¸* 500 F. Supp. 2d at 234. This assumption was stated plainly and unambiguously and is in direct and material conflict with Defendants' parenthetical description of the case's holding.

Nor was this lapse a stray occurrence in an otherwise sound set of submissions. For example, in their opening brief, Defendants cite *Bucalo v. Shelter Island Union Free School Dist.*, 691 F.3d 119 (2d Cir. 2012), for the proposition that the elements of a *prima facie* case of discrimination under the NYCHRL are coextensive with those under Title VII, § 1981, and the NYSHRL. (*See* Dkt. No. 26 at 5.) *Bucalo* neither involved nor addressed the NYCHRL. *See Bucalo*, 691 F.3d at 123 n.1 (addressing the NYSHRL but not the NYCHRL); *id.* at 123–24 (stating that the same elements apply to Title VII and the Age Discrimination in Employment Act). And, more importantly, this mistake is not a mere typo or miscite: it is a misstatement of

*Figueroa*, 500 F. Supp 2d at 234. ("[F]or the purposes of this motion, we shall assume that the initial denial of sick leave is sufficient to meet the third prong of a prima facie case."). And it is well established that "a written discipline may constitute a materially adverse action when it is placed in a permanent file that is consulted when making future employment decisions regarding promotions or pay." *Smith v. City of New York*, No. 16 Civ. 9244, 2018 WL 3392872, at *4 (S.D.N.Y. July 12, 2018). The allegations regarding the disciplinary action and the forfeiture of 60 sick days sufficiently plead an adverse employment action under Title VII.

Defendants' arguments fare no better as to the second period, when Valerio was involuntarily placed on leave. As to that period, they characterize Dr. Kwasnik's decision to place Valerio on the sick list as permitting Valerio to "take the extended sick leave he requested multiple times" and suggest that it constituted the "grant[] of a long sought-after benefit." (Dkt. No. 32 at 6.) But as anyone who has been sick or worked is aware, timing matters. Sick leave when one is healthy is not equivalent to sick leave when one is ill, just as, say, parental leave

---

well-settled law. "[I]t is beyond dispute that the City Human Rights Law . . . now explicitly requires an independent liberal construction analysis *in all circumstances*, an analysis that must be targeted to understanding and fulfilling . . . the City HRL's uniquely broad and remedial purposes, which go beyond those of counterpart State or federal civil rights laws." *Bennett v. Health Mgmt. Sys., Inc.*, 936 N.Y.S.2d 112, 116 (1st Dep't 2011) (internal quotation marks and citation omitted); *see also Loeffler v. Staten Island University Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (detailing at length the amendments to the NYCHRL that specifically "abolish[ed] 'parallelism' between the [NYCHRL] and federal and state anti-discrimination law") (quotation omitted)). There are literally hundreds of opinions reiterating this principle. The Court would expect better knowledge of the law of the City of New York on behalf of Defendant here, the City of New York.

These are not the only legal errors in Defendants' briefing. Mischaracterization of case law would be unbecoming of any party before the Court. It is doubly unbecoming of counsel opposing a *pro se* party, who may not have the legal sophistication or resources necessary to effectively identify or oppose the misstatements. And it is triply unbecoming of counsel for New York City, who work on behalf of the people of the city. Suffice to say, the Court is disturbed by the liberties taken in Defendants' submissions, which cross the line between vigorous advocacy and affirmative misrepresentation of the law.

8

before pregnancy is not equivalent to parental leave after a baby is born. And Valerio has alleged that the involuntary leave deprived him of overtime and other professional opportunities. *See Mazyck v. Metro. Transp. Auth.*, 893 F. Supp. 2d 574, 589 (S.D.N.Y. 2012) ("[A] denial of overtime can constitute an adverse employment action."). Valerio has met the third prong.

In the reply brief, Defendants raise three additional arguments in support of their motion to dismiss the disparate treatment claim. They argue first that Plaintiff's claim fails because "a complaint about a medical determination is insufficient to support a claim of discrimination" (Dkt. No. 32 at 2), but the cases they cite do not support that sweeping proposition, and, in any event, the argument was not raised in the opening brief. Because courts generally "should not consider arguments raised for the first time in a reply brief," the Court declines to consider this argument in support of the motion to dismiss. *P&G Auditors & Consultants, LLC v. Mega Int'l Commercial Bank Co.*, No. 18 Civ. 9232, 2019 WL 4805862, at *3 (S.D.N.Y. Sept. 30, 2019). They next assert that Valerio's allegations suggesting racial animus fail to meet the bar required at the pleading stage (Dkt. No. 32 at 2), that is, to "give plausible support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311. Again, however, Defendants had ample opportunity to raise this issue in the opening brief and failed to do so. It is therefore forfeited for the purposes of the motion to dismiss. Finally, Defendants argue that Valerio was disciplined not because of the forced leave which in turn was tainted with racial animus but rather because he failed to follow DOC procedures. (Dkt. No. 32 at 2.) Because Valerio's opposition papers, rather than his complaint, raised most of the allegations relating to the discipline, this argument is properly before the Court, despite its belated assertion. Nonetheless, the Court is unpersuaded. Whether Defendants "had legitimate non-discriminatory and non-retaliatory reasons for [their] actions" — such as Valerio's failure to adhere to department

procedures — "is an issue to be decided on summary judgment, not at the motion to dismiss stage." *Robinson v. Gucci Am.*, No. 11 Civ. 3742, 2012 WL 259409, at *6 (S.D.N.Y. Jan. 27, 2012). Valerio has stated a claim for disparate treatment under Title VII.

### 3. Retaliation

Valerio alleges that Defendants retaliated against him in violation of Title VII. Specifically, he states that after Valerio threatened to report Dr. Kwasnik, informed his own supervisor, and filed additional complaints with Dr. Kwasnik's commanding officer, the EEO, the N.Y.S. Department of Health, and the U.S. EEOC, Dr. Kwasnik retaliated by placing him on involuntary leave. "To establish a prima facie case of retaliation, an employee must show that (1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012).

Defendants first recapitulate their argument that Valerio has not alleged a materially adverse action. (*See* Dkt. 26 at 10–12.) But for the reasons already stated, Dr. Kwasnik's placement of Valerio on the sick list after Valerio asked to return to work constituted an adverse employment action. Defendants' only remaining contention, then, is that Valerio's allegations do not establish a causal connection between his protected conduct and the adverse action. (*See* Dkt. No. 26 at 12.) Specifically, they argue that neither the complaint nor the opposition papers support a plausible inference that Dr. Kwasnik or the medical staff at the DOC knew of Valerio's complaint to the EEO, and that absent knowledge of the complaint, there can be no causal connection. (*See* Dkt. No. 26 at 12; Dkt. No. 32 at 6.)

As a preliminary matter, Defendants' argument fails because Valerio has alleged several actions that he characterizes as protected activities, including his threat *directly to* Dr. Kwasnik

10

and his subsequent complaint to Dr. Kwasnik's superior in HMD. (*See* Compl. ¶¶ 34, 35; Dkt. No. 31 at 12.) Defendants have not opposed or addressed Valerio's characterization of these actions as protected, and each allegation implies direct knowledge on behalf of HMD medical staff and Dr. Kwasnik personally of Valerio's protected activity.

In any event, even if the EEO complaint were the only alleged protected activity, Defendants' challenge would still fail. A Title VII plaintiff need not allege facts directly showing a decisionmaker's knowledge of protected activity to support a causal connection to an adverse action. Instead, causation may be shown "indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence." *Gordon v. N.Y.C. Bd. of Educ.*. 232 F.3d 111, 117 (2d Cir. 2000). Valerio's EEO complaint — which was filed on March 27, 2018, and remained pending through October 1, 2018 (*see* Compl. ¶¶ 37, 39) — and the reversal of Dr. Kwasnik's sick list determination — which occurred in April 2018 (*see* Compl. ¶ 44, 46) — are sufficiently proximate that a reasonable jury could infer causation. *Cf. Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) (collecting cases suggesting that two to three months is often regarded as the maximum for temporal proximity supporting an inference of causation). Valerio was therefore not required to allege facts directly indicating that Dr. Kwasnik or the HMD specifically knew of the EEO complaint.

### 4. Hostile Work Environment

The Defendants finally argue at length that the incidents with Dr. Kwasnik failed to amount to a hostile work environment. (*See* Dkt. No. 26 at 6–9.) Valerio does not respond to Defendants' arguments on this score in his opposition papers. The Court therefore deems this claim abandoned, and it is thus dismissed. *See Lipton v. Cty. of Orange*, 315 F. Supp. 2d 434,

446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.")

  **B.**  **Section 1981**

  Valerio's complaint also invokes 42 U.S.C. § 1981, which prohibits discrimination and retaliation on the basis of race. *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 445 (2008). As Defendants note (*see* Dkt. No. 26 at 12) and Valerio does not contest, however, "the express 'action at law' provided by [28 U.S.C.] § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989); *see also Duplan v. City of New York*, 888 F.3d 612, 619–20 (2d Cir. 2018) (affirming the continued vitality of *Jett*). Accordingly, to prevail on his § 1981 claim against the City, Valerio must allege that the "challenged acts were performed pursuant to a municipal policy or custom." *Duplan*, 888 F.3d at 620; *see also Monell v. Dep't of Soc. Servs. of N.Y.*, 426 U.S. 658, 694 (1978). Valerio has alleged no such thing, and his § 1981 claims against the City of New York are therefore dismissed.

  Defendants do not otherwise distinguish between Section 1981 and Title VII, and the elements of disparate treatment and retaliation claims under Section 1981 are, as relevant here, otherwise identical to those of race-based discrimination under Title VII. *See Vivenzio*, 611 F.3d at 106; *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010). Thus, for the same reasons Valerio's Title VII disparate treatment and retaliation claims against the City survive the motion to dismiss, so too do his corresponding Section 1981 claims against Dr. Kwasnik.

C. **State and City Law Claims**

Finally, Valerio asserts claims under the NYSHRL and the NYCHRL. "Claims brought under the NYSHRL are analyzed identically" to those brought under Title VII, and therefore "the outcome of an employment discrimination claim made pursuant to the NYSHRL is the same as it is under . . . Title VII." *Hyek v. Field Support Servs., Inc.*, 461 Fed. App'x. 59, 60 (2d Cir. 2012) (alteration in original) (citation and internal quotation marks omitted). The sole difference relevant here is that a coworker or supervisor who "actually participates" in the conduct giving rise to the discrimination claim may be held individually liable under the NYSHRL. *Feingold v. New York*, 366 F.3d 138, 157–58 (2d Cir. 2004) (citation omitted). It follows that for the reasons stated above, Valerio has stated claims for retaliation and disparate treatment under the NYSHRL, but unlike the Title VII claims against Dr. Kwasnik, the individual NYSHRL claims against Dr. Kwasnik may proceed.

Unlike state law claims, NYCHRL claims must be assessed "separately and independently from any federal and state law claims," in order to give effect to the law's "broad and remedial purpose[]." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). But the parallel state and federal provisions at issue here are narrower than the corresponding NYCHRL provisions — indeed, they are a "floor below which the City's Human Rights law cannot fall." *See Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 66 (citation omitted); *see also supra* note 4. Thus, because Valerio has satisfied the more demanding standards that govern his federal and NYSHRL claims, he has also satisfied the forgiving standards that govern his NYCHRL claims.

IV. **Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED as to the hostile work environment claims, the Title VII claims against Defendant Kwasnik, and the § 1981

13

claims against Defendant City of New York.  The motion to dismiss is otherwise DENIED.

Defendants shall file answers to the remaining claims within 21 days of the date of this order.

    The Clerk of Court is directed to close the motion at Docket Number 24.

    SO ORDERED.

Dated: January 21, 2020
       New York, New York

                                          J. PAUL OETKEN
                                      United States District Judge

*COPY MAILED TO PRO SE PARTY BY CHAMBERS*